Good morning, everyone, and welcome to the Ninth Circuit. Before we begin today, Judge Koh and I would like to thank our colleague, Judge Boggs, from the Sixth Circuit, who's sitting with us this week. We very much appreciate him being here. We're going to hear the cases in the order that they're on the calendar. Three of the cases have been submitted under briefs. Mungia v. Garland, Pearson v. Kajikaiki. I apologize to the acting commissioner. And one other, Nunali. So the first case up for argument is United States v. Sanchez-Ramirez. You may proceed when ready. Elizabeth Daly Good morning, Your Honors. May it please the Court, it's nice to be here in person. My name is Elizabeth Daly. I'm representing the appellant, Jose Sanchez-Ramirez. I understand that my time will count down. I do intend to reserve two minutes of my time for rebuttal. Judge Kohl I'll try to keep track for you, but watch for yourself. Elizabeth Daly In 2009, Mr. Sanchez-Ramirez was charged in administrative removal proceedings. He proceeded pro se, waived his rights to contest the charges or to seek any kind of judicial review, and he was ordered removed all in a single day. But Mr. Sanchez-Ramirez never knew that any of that was happening, because all of the proceedings were conducted in English at a time when he only spoke Spanish. Judge Kohl Can I ask you a preliminary question about this case that's interested me? Mr. Sanchez-Ramirez was convicted how many times of illegal reentry? Not counting this one. Elizabeth Daly I believe there were two prior, but I'm certain that my colleague will— Judge Kohl I think there were several prior. I've never seen a case where the due process defense is raised, collateral attack is raised, where it hasn't been raised in prior cases. Does that have any relevance? Elizabeth Daly I don't believe that it does. It would have to — if it had relevance, it would be as to a maybe waiver or law of the case doctrine. Judge Kohl And I know the government's not asserting anything based on it. It just — it strikes me as strange, because in effect what you're doing is not only collaterally attacking the removal order, you're collaterally attacking the prior convictions in a sense, aren't you? Elizabeth Daly That is correct. I'm not certain that a collateral review, if it were successful in this case, would have any retrospective impact on the prior convictions. Certainly because the removal proceeding here was in 2009, if there were a due process error there, he could have raised those challenges before. Judge Kohl Well, let me — now that I've taken you astray, let me take you back to what I think you — the essential question in this case, because the government has conceded for purposes of this case that there was a due process violation. Elizabeth Daly Correct. Judge Kohl What's our standard for measuring prejudice? In other words, the — is it — the question — our cases say it's plausibility. Why is it plausible that had your client not been subjected to this administrative removal in 2009, that he would have been granted cat relief, which seems to be the only relief that he's — would be eligible to seek? Elizabeth Daly Correct, Your Honor. The plausibility standard is definitely the correct standard under this Court's holding in Riavaca, which clearly says that plausibility means a sufficient evidentiary basis upon which relief could have been granted. Judge Kohl But it's more than a pleading basis, right? I think our cases — Elizabeth Daly I don't believe it is more than a pleading basis. Judge Kohl Don't our cases make — don't our cases make that pretty clear? Don't they say it has to be more than possible or — so possible strikes me as a pleading burden. Doesn't this standard require us to at least look at the content of the evidence and see whether it's likely or plausible, if you will, that relief would be granted? Elizabeth Daly Well, we definitely know that plausible is less than likely. That's been explicitly stated. Judge Kohl For sure. But it's more than just possible, as our cases say. Elizabeth Daly In Riavaca, the Court did cite two pleading standard cases for the plausibility standard, especially here where it's a mandatory form of relief. Convention against torture is not like voluntary departure or withholding of removal — I'm sorry, not withholding of removal — withdrawing an application where there's discretionary factors. When there's a discretionary factor, the Court has to look at eligibility as one issue and also the favorable exercise of discretion as a second issue. And only if it's plausible that an immigration judge would have exercised discretion favorably is there a plausibility threshold met. Judge Kohl May I go back to one of the factual assertions you made at the beginning. You said that nothing was done in Spanish for the 2009 removal, but I'm looking at paragraph 28 of Mr. Sanchez-Ramirez's declaration, and he says one of the ICE agents spoke a few words and broken phrases in Spanish. Granted, we can certainly probably agree that wasn't sufficient, but is that not different than Reyes-Bonilla, where the Court said there was no clear evidence that anything was in Spanish because the box that was checked said either explained or served in Spanish? Judge Kohl May What the Court understood — well, two parts of that question. I'll address Reyes-Bonilla's, and then I'll address the facts of this case. What the Court found in Reyes-Bonilla's was that at a minimum, the notice of intent had been at least served in Spanish because of the box that the immigration officer had checked. And so they said that's evidence. It might not have been explained in Spanish, but it was at least served. And so in that case, the Respondent had the opportunity to understand that he was subject to removal proceedings. Judge Kohl May Does the case indicate at all — I've read it several times — that Mr. Reyes was literate or that he understood anything. I thought the Court proceeded from the assumption that he really didn't have any understanding of what was explained. But the case turned, as this one does, I think, in the end on prejudice, didn't it? Ms. Reyes-Bonilla The case did turn on prejudice. The Court left open the possibility of presumptive prejudice for a more serious violation of the right to counsel. And we do assert that this is that case. Judge Kohl May But isn't it the same? You see, that's my problem. And all we can tell from the record is that no one explained to Mr. Reyes his rights in Spanish, and no one explained to Mr. Sanchez his rights in Spanish. So the process violation. And they didn't presume prejudice in Reyes. They went on to look at whether or not this particular individual was likely to be granted relief. Now, I agree it was discretionary relief in that case. But it does seem to me that the case stands for the proposition that you look at the individual case and see whether there's — I don't know what to call plausibility. It's something between zero and 50. But it's — but you have to look at the facts of the case to come to it, don't you? Ms. Reyes-Bonilla Several responses. I do just want to briefly say there were a few words of broken Spanish spoken, but none of them went to the nature of the proceedings. And so I think that's what I would — Ms. Reyes-Bonilla How do we know that? How do we know that? That's not clear from paragraph 28 of his declaration. Ms. Reyes-Bonilla Because what Mr. Sanchez Ramirez stated in his declaration is that he — he believed, because of what the immigration officers had told him, that his deportation had already been ordered. So he had no opportunity to interact as a person charged in a removal proceedings. The fundamental nature of what was happening was alluded from him. Mr. Sanchez Ramirez But he did indicate to the — I guess they were INS officers at the time, the officers — Ms. Reyes-Bonilla I believe they were ICE officers. Mr. Sanchez Ramirez — ICE officers that he had — he did not fear returning to Mexico. Ms. Reyes-Bonilla He said that at a different point in time. Mr. Sanchez Ramirez Right, right. But before he was removed? Ms. Reyes-Bonilla In 2008. The removal here was in 2009. Mr. Sanchez Ramirez Right. Right. When he was first detained, he was asked by them, do you fear returning to Mexico? And he said no. Ms. Reyes-Bonilla Yes, Your Honor. That's correct. And the reason — Mr. Sanchez Ramirez And that apparently occurred in language that he could understand and respond to. Ms. Reyes-Bonilla That did happen in Spanish, yes. Mr. Lankford Was that — was that only one time or at least two things in the record that say he had no fear of persecution? Ms. Reyes-Bonilla There were more than two. Mr. Lankford Okay. I thought — Ms. Reyes-Bonilla There were more than two. They happened Mr. Lankford Given that, do we need to look at how plausible is it that he would have applied had he been asked, even before we get to the question of how plausible is it that he would have been granted? Are there really two steps there? Ms. Reyes-Bonilla I believe that this court should look directly to Reyes-Bonilla. In Reyes-Bonilla, they say plausibility is sufficient evidence upon which relief could have been granted. In that case, the defendant said, I never intended to have to apply for asylum, and I want to return to Guatemala as soon as possible. I am not afraid to return to Guatemala. And in that case, the court did not assess individually whether the person would apply. Here we have statements that are made totally in a different context. The point of the prejudice inquiry is to not determine — not to litigate the claim, but to determine, is there a plausible alternative outcome had his right to counsel been afforded? Had he consulted with an attorney? Had somebody asked him about the meaning of this attack against his family, the prior history of violence, the continuing threats? Would he have sought convention against torture relief, and would he have had an evidentiary basis in the light most favorable to him, which is what Reyes-Bonilla states? Ms. Reyes-Bonilla But you would concede that in Mr. Sanchez-Ramirez's declaration, he does not allege any government acquiescence, participation, any role whatsoever in the incident that happened to his family in 1991? Mr. Sanchez-Ramirez No, I don't concede that. I believe the record is that the individuals who attacked his family included a government employee. Mr. O'Brien Well, that's what his mother said. Ms. Reyes-Bonilla That's what his mother said. Mr. O'Brien That's what the investigator says his mother said. Ms. Reyes-Bonilla But the mother also never says she was tied up and had a gun put to her head, which is what Mr. Sanchez-Ramirez's declaration says. So how do you square all these differences between his mother's statement to the investigator and Mr. Sanchez-Ramirez? Ms. Reyes-Bonilla Your Honor, my response is that it should have been for an immigration judge to assess after a full and fair hearing whether Mr. Sanchez-Ramirez had submitted enough evidence to show a likelihood of torture.  Mr. O'Brien Let me stop you there for a second. I'll give you some extra time for rebuttal. We've taken you to your limit today. Would an immigration judge have had to pay any attention to what a lawyer says Sanchez's mother told him? In other words, here we are many years after the fact. We don't have a declaration. We don't have any testimony. What we have is hearsay from someone who says something that's a little bit inconsistent with his declaration. When we look at whether or not it's likely that he would have gotten relief, plausible, sorry, what do we look at? Ms. Reyes-Bonilla You look at the light, the evidence and the light most favorable. Mr. O'Brien No, with the evidence. That's my question. Ms. Reyes-Bonilla I believe that the evidence includes unsworn statements. I don't read any case to say that only sworn affidavits are included in the prejudice inquiry. Mr. O'Brien But if you were in front of the IJ, could you bring in a letter? Not a letter. We don't even know what his mother said. Someone who said the mother once said something to me and have the IJ. I know the rules of evidence don't apply, but would the IJ have to give any credence to that at all? Ms. Reyes-Bonilla Well, Your Honor, I'm a criminal defense attorney, and one of our arguments here is that a criminal defense attorney is not qualified to present a convention against torture claim in front of an immigration judge. That isn't an argument that the government's raised here as a reason not to credit what the mother has said. And again, I think that the standard, and I'm sorry, I'm over my time. Mr. O'Brien I'll tell you what, why don't you stop? We'll give you a couple minutes for rebuttal. Ms. Reyes-Bonilla I appreciate that. Mr. O'Brien You're over because we took you over. Let's hear from the government. Ms. Reyes-Bonilla Thank you, Your Honors. Good morning. May it please the Court, Sarah Barr appearing on behalf of the United States. Congress has mandated that a defendant who seeks to collaterally unfairness. And it is well settled for 30 years in this court that fundamental unfairness requires a showing of actual prejudice. Now the defendant points to speculative dicta in Reyes-Bonilla to suggest that the door remains open to this court to presuming prejudice, but nothing Mr. O'Brien Let's just assume that we don't presume prejudice for a moment. How do we measure prejudice? That's the question that we've been exploring with your friend. It's not, we don't try the case. We don't, you know, we don't conduct a summary judgment analysis, I don't think. What do we do to determine that it's plausible that he was prejudiced? Ms. Reyes-Bonilla You look to prior cases that this court has issued to serve as guideposts. And those cases state quite clearly and repeatedly that it is not enough for the evidence to establish what is merely conceivable relief. And it is not enough for the evidence to establish merely what is possible relief. There must be a threshold by which the evidence suggests that the outcome could have been potentially affected. And that's not what we have here. Mr. O'Brien The cases that we've decided are cases in which the relief is discretionary. Withholding or asylum or some other form of relief. Is the analysis different when the relief is mandatory? Ms. Reyes-Bonilla I don't think so. I think the analysis is the same because what you're looking at is whether or not it is plausible that whatever form of relief is being requested is, you know, being fulfilled by whatever evidence the defendant presents. Mr. O'Brien So it meets the standard that applies to the particular form of relief. Ms. Reyes-Bonilla Correct. Exactly. And so here we have cat relief, which is very explicitly delineated by the regulations. And so Mr. Scalia And here, here I won't get it wrong. Here you need to show a probability that you'll be tortured. Ms. Reyes-Bonilla Yes. You have to show that it is more likely than not.  More likely than not. Ms. Reyes-Bonilla Yes. That is correct. Mr. Scalia However we stumble over the words likely elsewhere, this is 50 percent plus something. Ms. Reyes-Bonilla Correct. Mr. Scalia So why doesn't the evidence here meet that standard in your view? Ms. Reyes-Bonilla For several reasons, Your Honor. First, the regulations require that consideration of the likelihood factor be assessed under the totality of the circumstances. And what the defendant presents here in his evidence is primarily a single incident of harm that occurred 20 years before his removal. Mr. Scalia Can I stop you there for a moment because I'd like to ask counsel for the appellant to think about this in her response. What do we know as of 2009? Because we know a lot of things after, but I don't think we're entitled to take them into account. I don't think we can take into account his repeated assertions after 2009 that he didn't fear being returned. So we know in 2009 what? We have his declaration. We have his statement to the ICE officers that he didn't fear returning in 2008. And we have – and tell me what else we have. Ms. Reyes-Bonilla So two things, Your Honor. First, I would disagree that you're not allowed to consider statements made post-removal. In Reyes-Bonilla, this Court expressly considered statements that he made post-removal that he did not fear torture. Reyes-Bonilla involved an initial removal, which was at issue, the 2001 removal. That removal was then reinstated in 2007. And at that time, he initially claimed a fear of torture and then withdrew that claim. And this Court said that that But weren't we focusing on the 2007 removal there because we had a reinstated order? Here we're focusing on the 2009 removal. Now, the question is, had he been afforded due process in 2009, is it plausible that he would have been granted relief? And I don't know how we can then look at things that occur after 2009 to determine that. When Reyes were dealing with a reinstated order, so we're looking at the time of that reinstated order. So just a quick correction. Reyes-Bonilla was a reinstated order, but the due process argument and the claim that he was raising was the 2001 initial removal order on which the reinstatement relied. But I understand the purpose of your question. And what we can consider to have been evidence that might have been available to the IJ in 2009 is simply what the defendant has presented here. And that is the information in his home was invaded by local ranchers, that they were motivated by some sort of a revenge that they had against his father. And... His mother says one of them was a local official. Well... There's no indication that he was doing this in the performance of his duties. But back in 2009, that would have been enough to qualify for the government action part of CAT, would it not? I disagree, Your Honor, because the summary of the mother's statements are written in the present tense. The mother said they now have ties to the government, and one of them now is a government employee. There is no evidence whatsoever to suggest or confirm with any measure of reliability that they were related to the government at the time of the attack. And certainly the defendant's declaration, which is the most persuasive information and would be given the greatest weight, does not include that information at all. Now, the mother's interview does say that they were terrorized many times since the 1991 incident, right? So it's not just one single isolated incident. So, again, I would argue that that is a vague statement that does not explain who was terrorized many times. It does not explain what this terror was, because the regulations require a very specific type and level of harm in order to qualify as torture. So this characterization of being terrorized does not necessarily meet that. And the only person... Can I tell when from this either? I'm sorry? Can I tell when from the mother's statement? I guess it's not a declaration, but the mother's statement to the investigator. Does it put a time on these later incidents? It does not. It just says since then. So it could very well have been after 2009. But we do know that Mr. Sanchez remains in Mexico for how many years after this incident? Ten years, Your Honor. Ten years. And his declaration doesn't speak of any of these incidents? Correct. Counsel, can I ask you, your colleague said that we have to look at everything in the light most favorable to the claimant. Is that your position? You talked about totality of the circumstances, which would seem to be to allow consideration of opposing or derogatory information. So I think those are two separate things. The CAT regulation requires the consideration of a totality of circumstances in determining whether there is a likelihood that the defendant would be tortured. In considering... A possibility. A likelihood. A likelihood. And then watered down to plausibility. Well, it's a likelihood for sure for the torture part of it, for the collateral attack part of it. Right. Then it is viewed in the light most favorable to the defendant. But that does not mean that the defendant gets the benefit of the doubt that the evidence says something, anything, or that the evidence means anything more than what it actually says. Let me follow up on that question, because this is where I've been struggling with this case. We're all lawyers, and we can recognize a really weak case when we see one. But it would survive a motion to dismiss. It might even survive summary judgment. But we all know looking at it, there's no way anybody would get relief on it. What standard do we use to measure plausibility in these circumstances? So I think another standard that this court must use is, which has been mandated actually by this court, is that the court must look to other cases to see whether a similarly situated defendant has been... And does the defendant have the burden to bring forth another case? Yes. In his presentation? Yes, he does. Did the defendant here do that? No. The defendant presented... I understand that ABLE counsel is now arguing where he has put it. Yes. So the defendant cited, between the opening brief and the reply brief, the defendant cited three cases which are easily distinguishable. They do not involve a similarly situated defendant. They involve aliens who suffered torture that is specifically by police officers and military officials. And the government in its brief has cited a robust body of case law in this circuit of applicants who are more similarly situated to the defendant that shows that claims for them are routinely denied. If we think that Reyes Bonilla is inapposite, why should we not presume prejudice? I'm sorry, if you believe that Reyes Bonilla is... If we think the instant case is distinguishable from Reyes Bonilla, why should we not presume prejudice? Because after Reyes Bonilla, this Court explained and confirmed and reaffirmed in Montes Lopez that prejudice is not presumed in the context of 1326 proceedings specifically because of the limited right that a defendant has to collaterally attack their removal. So the case law that the defendant cites to suggest that there remains this opportunity for presumption of prejudice is direct review of an immigration proceeding. And this Court has distinguished that line of cases, direct review, from cases that evolve from a collateral attack, which is what we have here. Unless my colleagues have other questions, thank the government for its argument. And we'll put two minutes on the clock for the appellant. Thank you, Your Honor. Thank you. I will attempt to use my two minutes effectively. There's no requirement that we cite to similar cases where cat relief is granted. As this Court knows, it's difficult to have published opinions granting cat relief because mostly those cases are not appealed. The similar case requirement was articulated in Gonzales-Flores, a case involving discretionary relief. And they cited in instances of discretionary relief for plausibility, you have to cite similar cases. That's not this case. I believe... Would it be enough in your view then for an appellant or a defendant to say, 20 years before I entered the United States, a police officer beat me up? No, Your Honor. That wouldn't be sufficient because it doesn't show extending forward. Okay. So what in this case? And it doesn't show that the person is targeted. Okay. What in this case shows extending forward that I can point, that I know happened before 2009? Well, Your Honor, we can't freeze the time frame at 2009 because we didn't have an opportunity for a hearing then. If Mr. Sanchez-Ramirez's mother could have testified then, she could have isolated specifically when. But she would have had a talk about before 2009. Yes. You're still saying it was your burden to bring forth something to show that there was a plausibility of relief. And all that we have is the mother's third-party statement that doesn't talk about times, the quality of events, or anything else. I don't believe our burden is as particular as that because we're not here in front of an immigration court. We're not here able to bring the mother forth to testify. She's not able to be cross-examined about when did that happen. What are the details of that incident? How can we know that that's likely to happen again? That's what would happen at an immigration hearing. Would it be enough for you to say if we had a hearing, his mother would provide evidence? Yes. Because I think this one incident on its own probably is not enough to meet the cat. No. I think you agree to that. I agree to that. We need something more that shows that it's some level of probability of torture in the future. Yes. All we have is his mother's declaration, right? It can be established by a single incident in some cases where there's a strong inference that it's likely to happen again. Here, the inference that it's likely to happen again comes from his mother's statements to him. There's also indications in the pre-sentence report that these— Are the statements to him, to him, Mr. Sanchez-Ramirez, or to the investigator? His mother's statements to the investigator that were submitted in the form of an investigation report indicated that it happened many times. And so the reasonable inference from that that an immigration judge could have drawn after a hearing in which all of these details are fully fleshed out is that there is a likelihood of future torture. Let me just say one other thing, and I wanted to just make sure you got a chance to say it. We know you rely on the mother's statement. What else is there in this record that occurred before the time of removal that would be evidence that he faced torture if returned to Mexico? The fact of the reason why this family was targeted, what we have— But that all comes from the mother's statement. I mean, so tell me, is there any other— It's in his declaration as well, I believe, in his affidavit. Okay, but other than his— But that's not a government target reason. These are ranchers who want revenge and are targeting vulnerable poor families. And I believe it did say that they had government ties. No, his declaration does not. His does not. Put aside for a moment what they say. Can we ask just one quick question on the mother's statement where she says we've been terrorized many times since. The only example she gives is a week before her June 2020 interview. So even that is not really confined to anything that occurred prior to 2009. And again, I don't believe that when we're talking about reasonable inferences that could be drawn, if we have a full hearing where the mother is called to testify, details like that can be pulled out. That's the purpose of having a hearing with a back-and-forth. But I ask a different question. My question is, I'm just trying to look at this record and figure out what supports your position. We have his declaration. We have his mother's statement for whether we can parse the statement and determine what it says. What else is in this record before 2009, is evidenced before 2009 that he faced torture of return? Well, there's two other things. We also offered country conditions evidence from before 2009 or circa 2009 about the prevalence of violence. What else? And the son's statement saying that as a child he wasn't allowed to return to Mexico because his father indicated that it was too violent. So it's not specific as to this type of targeting. Do we know as a child whether that was before or after 2009? No, Your Honor. But again, I believe that reasonable inferences can be drawn. How old was Mr. Ramirez-Sanchez when he entered the country? Nineteen. Perhaps a different answer. The son was born in 2007. He wasn't permitted to visit his father in Mexico. Right, so it's unlikely that he was told this before 2009. He was not told it before 2009 because he wouldn't have been old enough to speak about that. That's right. The reasonable inference from that is that that supports the conclusion that there was this violence before 2009. Well, see, here's my difficulty, and then we'll let you sit down. If we're allowed to look at stuff after 2009, then I have to take into account your client's repeated statements to authorities that he had no fear of returning to Mexico. And so you can't keep those out and get other stuff into the account. But I do think you can consider those statements to the extent that they would undermine an evidentiary basis. They do not undermine an evidentiary basis. It would still be reasonable for an immigration judge having considered those statements. I don't believe we isolated at 2009. We consider whether the reasonable evidence could have established a CAT claim in 2009, which is slightly different. Thank you. I appreciate the time. We appreciate your arguments, both sides, and this case will be submitted.
judges: Boggs, HURWITZ, KOH